## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 23-cv-23524-BLOOM/Torres

ARCH INSURANCE COMPANY,

     Plaintiff,

v.

A3 DEVELOPMENT, LLC, a foreign
Limited liability company; A3 NORTH
DEVELOPMENT, LLC, a foreign limited
A liability company; and A3 AMENITIES,
LLC, a foreign limited liability company,

     Defendants.

_____/

### ORDER ON MOTION TO DISMISS THIRD AMENDED COMPLAINT

**THIS CAUSE** is before the Court upon Defendants A3 Development, LLC ("A3

Development"), A3 North Development, LLC ("A3 North"), and A3 Amenities, LLC's ("A3

Amenities") (collectively "Defendants") Motion to Dismiss with Prejudice Plaintiff Arch

Insurance Company's Third Amended Complaint ("Motion to Dismiss"), ECF No. [88]. Plaintiff

filed a Response in Opposition ("Response"), ECF No. [91], to which Defendants filed a Reply,

ECF No. [95]. For the reasons that follow, the Defendants' Motion to Dismiss is granted in part

and denied in part. While Plaintiff's Breach of Contract claims plausibly state claims upon which

relief may be granted, Plaintiff's Declaratory Judgment claims are dismissed as duplicative and

for lack of standing.

### I.  BACKGROUND

#### A.  Procedural Background

This case arises from a construction project for certain luxury residences in Miami Beach.

Plaintiff initiated this action by filing a Complaint on September 14, 2023, to which Defendants

filed an Answer. ECF No. [1], [13]. Plaintiff subsequently filed a motion seeking leave to file an Amended Complaint, which the Court granted. *See* ECF Nos. [24], [25]. On March 25, 2024, Defendants filed a motion to dismiss Plaintiff's Amended Complaint. ECF No. [27]. The parties thereafter conferred and agreed that Plaintiff could file another amended complaint. *See* ECF No. [30]. Accordingly, the Court granted Defendants' motion to dismiss the Amended Complaint and granted Plaintiff leave to file a Second Amended Complaint. ECF No. [31]. Plaintiff timely filed its Second Amended Complaint, ECF No. [32], to which Defendants filed a corresponding Motion to Dismiss. *See* ECF No. [33]. On November 20, 2024, the Court granted Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint without prejudice and with leave to amend. ECF No. [77]. On December 20, 2024, Plaintiff filed its Third Amended Complaint, ECF No. [80], alleging the following:

**B. Coastal Bonds**

Plaintiff is "in the business of providing surety bonds." *Id.* at ¶ 11. Plaintiff issued four performance bonds ("the Coastal Bonds") on behalf of R&S Concrete South, Inc. ("R&S") in favor of Coastal Construction of South Florida, Inc. ("Coastal") and Defendants (collectively the "Obligees") based on subcontract agreements ("the Bonded Subcontracts") R&S entered into with Coastal for concrete and masonry work for The Estates at Acqualina condominium project ("The Project"). *Id.* ¶¶ 13-14. A prerequisite before the Obligees may enforce the Coastal Bonds is either Coastal or the Defendants are required to be "in substantial compliance with their obligations under the Bonded Subcontracts[.]" *Id.* at ¶ 15. Additionally, the Obligees are required "to issue a formal declaration of default to R&S under the Bonded Subcontracts and to [Plaintiff] under the Coastal Bonds." *Id.* at ¶ 16. Plaintiff's performance obligations are triggered only after both requirements are satisfied. *See* ECF No. [80] at ¶ 18. Even if Plaintiff's performance obligations are triggered, Plaintiff still has an opportunity to mitigate damages by electing from the following options: (1)

promptly remedying the default; (2) completing the Bonded Subcontracts; (3) or by obtaining a bid for completing the Subcontract agreements. *Id.* Therefore, Plaintiff still had a "first right of performance to remedy any alleged default under the Bonded Subcontracts." *Id.* at ¶ 19.

### C. Coastal's Cessation of Work

On July 17, 2020, Defendants elected to replace Coastal with Suffolk Construction Company, Inc. ("Suffolk") as the general contractor for the Project. *Id.* at ¶ 20. Coastal notified R&S it was no longer working on the Project on July 24, 2020, and on September 15, 2020, R&S entered into a new agreement with Defendants wherein R&S agreed to continue performing the remaining work under the Bonded Subcontracts for the Defendants (the "Continuation Agreement").[1] Although R&S entered into the Continuation Agreement with Defendants to continue work, Plaintiff initially took the position that Defendants' decision to terminate Coastal rendered the Coastal Bonds null and void. *Id.* at ¶ 23. Eventually, however, the parties agreed the Coastal Bonds were valid to the extent the Bonds covered latent defects that occurred before the July 24, 2020 cessation date. *Id.* ¶ 24. Given the limited scope of the Coastal Bonds, Plaintiff issued new performance bonds ("A3 Bonds") in connection with the Continuation Agreement between R&S and Defendants that covered work performed by R&S after Coastal was replaced on the Project. *Id.* ¶¶ 24, 27.

### D. A3 Bonds

Under the new A3 Bonds, Plaintiff is under no obligation to perform so long as there is no Owner Default and:

1. [T]he Owner first provides notice to the Contractor and the Surety that the Owner is considering declaring a Contractor Default.

---

[1] Plaintiff alleges the Continuation Agreement was effective as of July 24, 2020—the Cessation date. *See* ECF No. [80] at ¶¶ 21-22.

2.  [T]he Owner declares a Contractor Default, terminates the Construction Contract[,] and notifies the Surety; and

3.  [T]he Owner has agreed to pay the Balance of the Contract Price in accordance with the terms of the Construction Contract to the Surety or to a contractor selected to perform the Construction Contract.

ECF No. [80] at 10-11 (emphasis removed from the original).

Additionally, prior to the termination of R&S, the A3 Bonds[2] require that Defendants provide R&S with "forty-eight (48) hour written notice to cure any alleged default, and then issue a second forty-eight (48) hour written notice" before terminating R&S's rights under the Bonded Subcontract. *Id.* at ¶ 33. If Defendants fail to satisfy any of these requirements, Plaintiff's performance obligations will not be invoked. *Id.* at ¶ 34. However, even if Defendants satisfy the requirements, Plaintiff is still entitled "to mitigate damages by arranging for the completion of the work under the Subcontracts." *Id.* Indeed, the A3 Bonds provide Plaintiff a reasonable opportunity to remedy the default by (1) arranging for a new contractor; (2) undertaking to perform and complete the construction project itself; (3) obtaining bids or negotiated proposals for performance and completion of the construction contract; or (4) waive its right to perform and complete or arrange for completion of the Construction contract. *Id.* at ¶ 35.

### E.  Defendants' Unilateral Performance Without Notice

A few months later, R&S began threatening to cease work on the Project due to non-payment under the Bonded Subcontracts. Due to R&S's threat of cessation, Defendants sent a letter to R&S and Plaintiff on September 23, 2021, "entitled Notice of Intent to Declare Default, Opportunity to Cure, and Demand for Pre-Default Meeting." *Id.* at ¶ 38. In the letter, Defendants "invoked the pre-default procedures of the A3 Bonds by calling for the § 3.1 pre-default meeting,"

---

[2] The A3 Bonds required Defendants to comply with the requirements of the Bonded Subcontracts before Plaintiff's performance obligations are triggered. Thus, even though the following requirements are set out in the Bonded Subcontracts, they are also requirements under the A3 Bonds.

but Defendants made no demand or alleged any defects in R&S's work. *Id.* at ¶ 39. However, Defendants did provide a "R&S Backcharge Summary," which indicated "a total of $5,541,795.71 in supplementation work, alleged corrective work, and an assortment of other backcharges against R&S." *Id.* at ¶ 41. (emphasis removed). Defendants never placed Plaintiff on notice prior to incurring the more than five million dollars in supplemental and corrective work outlined in the "R&S Backcharge Summary." *Id.* at ¶ 42.

The parties proceeded to hold the pre-default meeting, and R&S completed the rest of the work under the Bonded Subcontracts. *Id.* at ¶ 47.

Although the Bonded Subcontracts were completed, Defendants still owed backcharges and payments to R&S pursuant to the Bonded Subcontracts. Consequently, R&S filed suit against Defendants on December 6, 2021, for breach of contract for non-payment, claiming it was owed more than $4,400,000 for work performed under both the Bonded Subcontracts and Continuation Agreement. *Id.* at ¶¶ 51,52.

On July 10, 2023, the Defendants issued another letter to R&S and Plaintiff, "alleging certain deficiencies in the concrete foundation of the Project." *Id.* at ¶ 53. On July 26, 2023, Defendants once again invoked the § 3.1 pre-default process, identifying a number of issues with R&S's work. *Id.* at ¶ 54.

The parties then conducted a site visit on August 22, 2023, where it was discovered that a "vast majority of the issues identified [by Defendants] were previously discovered and corrected by [Defendants] and Suffolk, without any notice to [Plaintiff]." *Id.* at ¶¶ 56, 57. During the pre-default process, Defendants also purportedly disclosed they were "processing $9,913,701 in Suffolk backcharges to supplement and correct R&S' work as well as an "additional $2,252,703 in Owner backcharges" to complete the Project. *Id.* at ¶ 58. Accordingly, the $12,166,404 in

undisclosed backcharges "depleted the Bonded Subcontract funds which should have been available to [Plaintiff] under the A3 Bonds." *Id.* (emphasis removed). Due to the backcharges, Defendants advised there were no funds left to tender to Plaintiff in accordance with Section 3.3 of the A3 Bonds. Defendants also claimed over 7 million dollars in partial owner damages, which they sought to recover directly from Plaintiff under the A3 Bonds. *Id.* at ¶ 61.

### F. The Default of R&S and the Demand on Plaintiff

On September 8, 2023, Defendants sent a notice declaring R&S in default and terminated its rights under the Bonded Subcontracts while simultaneously making a demand upon Plaintiff under both the Coastal Bonds and the A3 Bonds (collectively the "Bonds") ("Declaration of Default"). *Id.* at ¶ 62. In declaring the default, Defendants failed to provide Plaintiff "with *any* time, reasonable or otherwise, to conduct its investigation and elect its remedy." *Id.* at ¶ 66. "Indeed, as part of their Declaration of Default, [Defendants] contemporaneously made demand upon [Plaintiff]…stating '[a]bsent such election, Owner will have no choice but to declare the Surety in default of the New Bonds as well as the Original bonds.'" *Id.* Defendant's invocation of the default procedures against Plaintiff "without giving [Plaintiff] any time after its Declaration of Default to investigate and elect its remedy, constitutes a material breach of the A3 Bonds." *Id.* at ¶ 67. Moreover, Defendants' decision to have Suffolk correct any of R&S's allegedly defective work without giving either R&S or Plaintiff an opportunity to first correct the defect also constituted a breach of Bonded Subcontracts and the A3 Bonds. *Id.* at ¶ 73. Given Defendants' breach/default of the Bonded Subcontracts, Plaintiff claims Defendants have "failed to satisfy the conditions precedent to asserting a claim under both the Coastal Bonds and A3 Bonds, thereby rendering same null, void and of no further force and effect." *Id.* at ¶ 81.

### G.  The Active Controversy Between the Parties

"On November 3, 2023, [Defendants] sent a letter to [Plaintiff] in which they purported to withdraw their claim against the Bonds." *Id.* However, according to Plaintiff, the November 3rd letter did not indicate the "controversy was over with finality," particularly given that Defendants withdrew their claims *without prejudice* and with "a full reservation of all rights, remedies, and damages available." *Id.* at ¶ 82. Consequently, Plaintiff "remains exposed to the claims asserted in the September 8, 2023[,] and November 3, 2023 letters." *Id.*.

In addition to preserving their claims, Defendants sent Plaintiff another letter on November 15, 2023, stating:

> [T]his letter shall serve as Owner's notice to the Surety of the Surety's unreasonable conduct and bad faith in connection with the closeout of R&S's work on the Project. As the Surety is aware, pending Owner's withdrawal and cancellation of the notices of R&S's default under the Bonds and claims against the Bonds, Owner, R&S and the Surety engaged in discussions to closeout R&S's work and resolve the disputes between Owner and R&S in connection with the Project.

*Id.* at ¶ 83. The November 15, 2023 letter further clarified that Plaintiff's wrongful conduct was its refusal "to enter into a Settlement Agreement based on demanding the full release of its Bonds, which is the same relief [Plaintiff] is seeking in this case." *Id.* at ¶ 84. Plaintiffs allege that Defendants have never withdrawn the November 15, 2023 letter and, therefore, Plaintiff remains exposed to a possible suit from Defendants for the claims in the November 15th letter as well. *Id.* at ¶¶ 85-86.

To remove any uncertainty that Defendants might still seek to assert claims under the Bonds in the future, Plaintiff reached out to Defendants to confirm the following:

> 1.  That the A3 Entities, jointly and severally, waive and/or release any actual and/or potential existing and/or future claims which may arise against Arch under the Bonds.
>
> 2.  That the A3 Entities acknowledge that the Bonds are null, void, discharged, and of no further effect; and

3.    That the A3 Entities have not assigned any rights under the Bonds to any third
party.

*Id.* at 87.

Defendants responded that the withdrawal of their claims was still with a full reservation

of rights and also re-averred the claims they asserted against Plaintiff in the November 15, 2023

letter. *Id.* at ¶ 88. Therefore, from Defendants' perspective, the Bonds remain in effect and Plaintiff

remains exposed to a potential lawsuit from Defendants at any time. *Id.* at ¶¶ 89, 90. However,

because Plaintiffs have asserted rights under the Bonds which Defendants have breached, Plaintiff

alleges that the contractual rights under the Bonds are a nullity and therefore, Plaintiff should be

able to obtain a declaratory judgment stating the same. *Id.* at ¶ 91.

Due to Defendants' alleged conduct, Plaintiff asserts the following claims: (1) Breach of

Contract as to the STS Coastal Bond; (2) Declaratory Judgment as to the STS Coastal Bonds; (3)

Breach of Contract as to the STM Coastal Bond; (4) Declaratory Judgment as to the STM Coastal

Bond; (5) Breach of Contract as to the NTS Coastal Bond; (6) Declaratory Judgment as to the NTS

Coastal Bond; (7) Breach of Contract as to the NTM Coastal Bond; (8) Declaratory Judgment as

to the NTM Coastal Bond; (9) Breach of Contract as to the STS A3 Bond; (10) Declaratory

Judgment as to the STS A3 Bond; (11) Breach of Contract as to the STM A3 Bond; (12)

Declaratory Judgment as to the STM A3 Bond; (13) Breach of Contract as the NTS A3 Bond; (14)

Declaratory Judgment as to the NTS A3 Bond; (14) Declaratory Judgment as to the NTS A3 Bond;

(15) Breach of Contract as to the NTM A3 Bond; and (16) Declaratory Judgment as to the NTM

A3 Bond. *See id.* at 24-61.

Defendants now seek to dismiss the Third Amended Complaint. ECF No. [88]. Defendants

argue the Declaratory Judgment claims should be dismissed for lack of subject matter jurisdiction

because (1) the Declaratory Judgment Act may not be used to litigate the merits of a breach of contract claim; (2) because the claims are either moot or not ripe, as no justiciable controversy exists; (3) and even if there was a justiciable controversy, the Court should exercise its discretion to abstain from ruling on Plaintiff's claims for Declaratory Judgment. *Id.* at 2.

Regarding the Breach of Contract claims, Defendants contend they must be dismissed for failure to state a claim because the Complaint "fails to plead an essential element of a claim for breach of contract—namely, that [Plaintiff] incurred any damages as a result of the A3 Entities' alleged breach of their obligations under the performance bonds." *Id.* at 2-3. Furthermore, given that this is Plaintiff's fourth attempt to adequately allege their claims, Defendants insist that the Complaint should be dismissed with prejudice. *See id.* at 3.

Plaintiff responds that there is a justiciable case and controversy because Defendants made a demand under the Bonds, bringing the continued validity of the Bonds into question and creating a substantial likelihood that Plaintiff will suffer an injury in the future. *See* ECF No. [91] at 2. Although Plaintiff acknowledges Defendants have withdrawn their demand on the Bonds, Defendants' "continuing statements that they have rights under the Bonds [keeps the case alive, and] establishes a justiciable controversy," given Defendants' material breach of the Bonds. *Id.* (emphasis removed). Plaintiff also maintains that its Declaratory Judgment claims are not duplicative of the Breach of Contract claims and will be useful in clarifying the parties' existing rights under the Bonds. Regarding the Breach of Contract claims, Plaintiff contends that it has adequately alleged each element necessary, including damages. *See* ECF No. [91] at 4.

## II.  LEGAL STANDARD

### A.  Article III Standing

Under Article III of the Constitution, federal courts are limited to adjudicating only "Cases and Controversies." U.S. Const Art. III § 2; *see Stalley ex rel. U.S. v. Orlando Regional Healthcare*

*System, Inc.*, 524 F.3d 1299, 1232 (11th Cir. 2008). For a case or controversy to exist, the Plaintiff must have standing to bring the action. *See I.L. v. Alabama*, 739 F.3d 1273, 1278 (11th Cir. 2014) ("Standing is one of the Article III case or controversy requirements."). "To have standing, the plaintiff[] must demonstrate injury in fact, causation, and redressability." *Id.* All three must exist before a federal court may exercise jurisdiction over the case. *See Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd.*, 484 F. Supp. 3d 1215, 1225 (S.D. Fla. 2020). "The 'foremost' standing requirement is injury in fact." *Trichell v. Midland Credit Management, Inc.*, 964 F.3d 990, 996 (11th Cir. 2020) (quoting *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 99 (1998)). "An injury in fact is 'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" *I.L.*, 739 F.3d at 1278; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "A 'concrete' injury must be 'de facto'—that is, it must be 'real, and not abstract.'" *Trichell*, 964 F.3d at 996 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)). However, an injury need not yet have occurred to constitute an injury in fact. A harm yet to occur will still satisfy the case and controversy requirement if it is "sufficiently substantial and imminent." *DiPierro v. Fla. Health Sci. Center, Inc.*, Case No: 8:23-cv-01864-KKM-NHA, 2024 WL 3051320, at *5 (M.D. Fla. June 18, 2024). A harm is imminent if there is "a realistic danger of sustaining a direct injury as a result" of the challenged conduct. *Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1161 (11th Cir. 2008) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).[3]

Ultimately, "[i]mminence" as a doctrinal standard is "somewhat elastic," and applying it is not an exercise in conceptual analysis but an attempt to advance the purposes behind the case-

---

[3] "*Merriam–Webster* defines 'imminent' in its online dictionary to mean 'ready to take place; *especially*: hanging threateningly" and provides as an example the "*imminent* danger of being run over[.]" https://www.merriam-webster.com/dictionary/imminent." *See Taylor v. Fred's, Inc.*, 285 F. Supp. 3d 1247, 1259 (N.D. Ala. 2018).

or-controversy requirement of Article III, including the guaranty of actual adversity between the parties, the limitation on the power of federal courts, and the reservation of judicial resources to resolve more concrete and pressing disputes[.]" *Browning*, 522 F.3d at 1161 (internal citations omitted).

### B.  Declaratory Judgment

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a). "In all cases arising under the Declaratory Judgment Act . . . the threshold question is whether a justiciable controversy exists" "between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995) (citations omitted); *Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 506 (1972) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). The act "vests district courts with discretion to dismiss declaratory suits when, in their best judgment, the costs outweigh the benefits." *James River Ins. Co. v. Rich Bon Corp.*, 34 F.4th 1054, 1059 (11th Cir. 2022).

"The test for the sufficiency of a complaint for declaratory judgment is not whether the plaintiff will succeed in obtaining the decree he seeks favoring his position, but whether he is entitled to a declaration of rights at all." *Schwab v. Hites*, 896 F. Supp. 2d 1124, 1132 (M.D. Fla. 2012) (internal citations and quotations omitted); *see also Norring v. Priv. Escapes, LLC*, No. 609-CV-2081ORL-19GJK, 2010 WL 963293, at *7 (M.D. Fla. Mar. 12, 2010) ("A motion to dismiss a complaint for declaratory judgment is not a motion on the merits. It is a motion only to determine

whether the plaintiff is entitled to a declaration of rights[.]"). To be entitled to a declaration of rights, a legal right must be infringed, or the risk of infringement must be substantially imminent. *See Point Conversions, LLC v. Lopane*, Case No: 20-CV-61549, 2021 WL 328533, at *17 (S.D. Fla. Jan. 8, 2021) ("Injunctive and declaratory relief are only available when a legal right has been infringed for which no adequate legal remedy exists"); *cf. Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) ("[T]o establish an injury in fact [for the purposes of a declaratory judgment or otherwise], a plaintiff must show that he or she suffered 'an invasion of a legally protected interest.'"). "Claims based merely upon assumed potential invasion of rights" or a dispute over factual rather than legal issues will not warrant judicial intervention. *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 324, 325 (1936); *see Int'l Health Brands, LLC v. Foy*, No. 24-CV-80679, 2024 WL 4438199, at *1 (S.D. Fla. Oct. 8, 2024) ("[C]ourts in this district have dismissed declaratory judgment claims when the purpose of the claim is for the Court to make factual determinations and not to clarify legal relations.").

### C. Failure to State a Claim for Relief

"On a Rule 12(b)(6) motion to dismiss, '[t]he moving party bears the burden to show that the complaint should be dismissed.'" *Sprint Sols., Inc. v. Fils–Amie*, 44 F. Supp. 3d 1224, 1228 (S.D. Fla. 2014) (quoting *Mendez–Arriola v. White Wilson Med. Ctr. PA*, No. 09–495, 2010 WL 3385356, at *3 (N.D. Fla. Aug. 25, 2010)). A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]'

devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. When a defendant moves to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the court must accept the plaintiff's allegations as true and evaluate all possible inferences derived from those facts in favor of the plaintiff. *See Am. Marine Tech, Inc. v. World Grp. Yachting, Inc.*, 418 F. Supp. 3d 1075, 1079 (S.D. Fla. 2019). In considering a motion to dismiss, the court is limited to the facts contained in the complaint and attached exhibits. *See Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006).

## III.   DISCUSSION

Defendants argue that the Court should dismiss Plaintiff's Third Amended Complaint because: (1) the claims for Declaratory Judgment are duplicative of the Breach of Contract claims; (2) the Declaratory Judgment claims do not present a justiciable controversy; (3) adjudicating the Declaratory Judgment claims would not be useful; and (4) the Breach of Contract claims fail to state a claim upon which relief may be granted.

### A.   The Declaratory Judgment Claims are Duplicative of the Breach of Contract Claims

Defendants contend that where a declaratory judgment claim is duplicative of a breach of contract claim, the declaratory judgment claim must be dismissed as it serves no useful purpose upon a resolution of the breach of contract claim. *See* ECF No. [88] at 14. Defendants argue that Plaintiff's Declaratory Judgment claims should therefore be dismissed as they "seek an

adjudication of the merits of [Plaintiff's] nearly identical [B]reach of [C]ontract claims." *Id.* Defendants maintain that the Declaratory Judgment claims involve the same underlying facts as the Breach of Contract claims, and both the Declaratory Judgment claims and Breach of Contract claims will ultimately require the Court to determine the extent to which the Bonds cover the alleged damages. *See id.* at 14-15. As such, there is no reason to conduct a coverage analysis to determine the scope of the Bonds twice.

Plaintiff responds that the Court has already determined its Declaratory Judgment claims are not duplicative because its "damage claims arise from [Defendants] *past* conduct in breaching the *Bonds* and wrongfully making a demand upon [Plaintiff], . . . while [Plaintiff's] *declaratory* claims arise from the additional fact[] that, *after* [Defendants'] prior breaches of the *Bonds*, [Defendants are] continuing to assert rights to make claims against [Plaintiff] in the *future*." ECF No. [91] at 3. (emphasis in the original but bold removed). According to Plaintiff, unlike the cases cited by Defendants, its Declaratory Judgment claims do not merely memorialize claims for past damages but rather seek to resolve future uncertainty. *See id.* at 17-18.

"The Court has substantial discretion to decide whether to consider a declaratory relief claim." *Toms v. State Farm Life Ins. Co.*, No. 8:21-CV-0736-KKM-JSS, 2022 WL 2758212, at *4 (M.D. Fla. July 14, 2022) (citing *Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 942 F.3d 1215, 1229 (11th Cir. 2019)). However, "a trial court should not entertain an action for declaratory judgment on issues which are properly raised in other counts of the pleadings and already before the court, through which the plaintiff will be able to secure full, adequate and complete relief." *UFP E. Div., Inc. v. Old Dominion Ins. Co.*, No. 3:19-CV-1113-J-34MCR, 2020

WL 4756820, at *12 (M.D. Fla. June 5, 2020) (quoting *Tamiami Condo. Warehouse Plaza Ass'n, Inc. v. Markel Am. Ins. Co.*, No. 19-CV-21289, 2019 WL 4863378, at *2 (S.D. Fla. Oct. 2, 2019)).[4]

Plaintiff's Declaratory Judgment claims are indeed duplicative of its Breach of Contract claims as both categories of claims seek a determination of whether Defendants materially breached the Bonds. *See Nahmad v. AIG Prop. Cas. Ins.*, Case No. 18-23622-CIV, 2019 WL 7971655, at *2 (S.D. Fla. Apr. 25, 2019) ("[A] court 'must dismiss a claim for declaratory judgment if it is duplicative of a claim for breach of contract, and, in effect, seeks adjudication on the merits of the breach of contract claim.'") (quoting *Miami Yacht Charters, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh Pa.*, No. 11-21163, 2012 WL 1416428, at *2 (S.D. Fla. Apr. 24, 2012)). The only difference between the claims is that the Breach of Contract claims seek damages, while the Declaratory Judgment claims seek a declaration that the Bonds are null and void as a result of Defendants' material breach. Plaintiff argues that the remedies sought are significant because the Breach of Contract claims attempt to remedy past injuries, while the Declaratory Judgment claims seek prospective relief. *See* ECF No. [91] at 17-18.

The distinction Plaintiff makes is ultimately inconsequential as a favorable resolution of Plaintiff's Breach of Contract claims will allow Plaintiff to accomplish both objectives. Of course, if Plaintiff prevails on its Breach of Contract claims, it may recover any damages it has incurred because of the breach. *See Country Network, LLC, Step2E Broadcast GMBH & Co.*, KG, Case No. 9:11-cv-810632012 WL 13330642, at *4 (S.D. Fla. June 7, 2012). Moreover, upon a ruling that Defendants materially breached the Bonds, Plaintiff, as the nonbreaching party, may "treat the breach as a discharge of [its] contract liability." *Kaufman v. Swire Pac. Holdings, Inc.*, 836 F.

---

[4] Although Rule 57 of the Federal Rules of Civil Procedure permits federal courts to preside over a declaratory action even where there exists another adequate remedy, courts still retain broad discretionary authority to decline declaratory relief. *See Presbyterian Univ. Ctr. of Tallahassee, Inc. v. Church Mut. Ins. Co.*, No. 4:24CV315-MW/MJF, 2024 WL 4800489, at *2 (N.D. Fla. Aug. 21, 2024).

Supp. 2d 1320, 1327 n. 4 (S.D. Fla. 2011); *Focus Management Group USA, Inc. v. King*, 171 F.

Supp. 3d 1291, 1299 (M.D. Fla. 2016) ("The general rule is that a material breach of the Agreement

allows the non-breaching party to treat the breach as a discharge of his contractual liability.")

(quoting *Colucci v. Kar Kare Automotive Group, Inc.*, 918 So. 2d 431, 437 (Fla. 4th DCA 2006)).

Therefore, Plaintiff need not pursue a separate action to nullify the Bonds as the resolution of the

Breach of Contract claims would have the same effect.[5] *See e.g.*, *Hamilton v. SunTrust Mortg.*

*Inc.*, 6 F. Supp. 3d 1300, 1309 (S.D. Fla. 2014) ("It is a fundamental principle of Florida contract

law that a material breach by one party excuses the performance by the other.") (citing *Indemnity*

*Ins. Corp. of DC. v. Caylao*, 130 So.3d 783, 786 (Fla. 1st DCA 2014) (additional level of citations

omitted)).[6] Because litigating the question of breach in both the Declaratory Judgment and Breach

of Contract claims would be "inefficient and unnecessary" since resolution of the Breach of

Contract claims will afford Plaintiff full and complete relief, the interest in judicial economy

warrants dismissal of the Declaratory Judgment claims. *Kenneth F. Hackett & Assocs. GE Capital*

*Info. Tech. Solutions, Inc.*, 744 F. Supp. 2d 1305, 1310 (S.D. Fla. 2010); *see Nahmad*, 2019 WL

7971655, at *4.

---

[5] The Court's analysis might be different if, in addition to the declaration, Plaintiff also sought an injunction or specific performance. *See Restless Media GmbH v. Johnson*, 704 F. Supp. 3d 1288, 1300-01 (S.D. Fla. 2023). However, because that is not the case, the Court does not believe dismissing the Declaratory Judgment claims denies Plaintiff full and complete relief.

[6] *See also Dolphin Direct Equity Partners, LP v. Interactive Motorsports & Entertainment Corp.*, No. 08 Civ. 1558, 2009 WL 577916, at *11 (S.D.N.Y. Mar. 2, 2009) ("Because this Court has already analyzed the parties' rights [and obligations] under the [Purchase Agreement, Management Agreement, and Non–Competition Agreement] in connection with [Plaintiffs'] breach of contract claim[s], a declaratory judgment on the same issue[s] would be superfluous.") (alterations in the original) (quoting *Core–Mark Int'l Corp. v. Commonwealth Ins. Co.*, No. 05 Civ. 0183, 2006 WL 2501884, at *9 (S.D.N.Y. Aug. 30, 2006)).

Case No. 23-cv-23524-BLOOM/Torres

**B.  Declaratory Judgment Claims Do Not Establish a Justiciable Controversy**

Moreover, even if the Declaratory Judgment claims were not duplicative of the Breach of Contract claims, Defendants contend that Plaintiff's Declaratory Judgment claims must be dismissed because there is no justiciable controversy sufficient to confer Article III standing. *See* ECF No. [88] at 15. Defendants point out they "have resolved their claims against [Plaintiff's] principal, R&S, and [have] with[drawn] and canceled the notices of R&S's default and all claims against the Bonds pursuant to the Withdrawal notice and the Dismissal Notices." *Id.* (citing ECF Nos. [33-1] through [33-4]). Thus, there is no present case or controversy involving the Bonds as there is no pending litigation against Plaintiff related to the Bonds, nor are Defendants currently demanding that Plaintiff perform under the Bonds. Consequently, the only potential basis for a declaratory judgment regarding the validity of the Bonds would be a future claim or demand on the Bonds. *See id.* at 16. However, because the threat of any future demand or claim against Plaintiff involving the Bonds is not yet substantially likely or imminent, a declaratory judgment on the validity of the Bonds would amount to an impermissible advisory opinion. *See id.* Therefore, since any case or controversy involving the Bonds is either unripe or moot, Plaintiff lacks standing to assert its Declaratory Judgment claims.

Plaintiff argues there is an actual controversy, as there is a current injury or risk of future injury that is sufficiently imminent to establish standing for each of its Declaratory Judgment claims. Plaintiff contends that Defendants never fully withdrew their claims against Plaintiff, and as such, there is a present live controversy that entitles Plaintiff to seek a declaratory judgment on the continuing validity of the Bonds. *See* ECF No. [91] at 13. Plaintiff argues that Defendants' supposed post-litigation withdrawal of their claims does not render the controversy moot since Defendants' withdrawal was without prejudice. *See id.* at 14. According to Plaintiff, "there is

17

nothing [Defendants] can do to unilaterally moot [Plaintiff's] dispute unless [Defendants] acknowledge[ ] that [they are] never going to seek relief against [Plaintiff] in the future." *Id.* at 15. Given the ever-present threat of Defendants making a demand on the Bonds or initiating an action related to the Bonds, Plaintiff insists that a case and controversy exists and therefore, it may attempt to resolve the dispute by means of a declaratory judgment. *See id.* at 16. The Court finds that Defendants' withdrawn claims and the withdrawn demand for Plaintiff to perform under the Bonds do not give rise to a live case or controversy.

Before a court may exercise jurisdiction over a declaratory action, there must be a continuing "actual controversy," that is not "conjectural, hypothetical, or contingent," and instead is "real and immediate," creating "a definite, rather than speculative threat of future injury." *Emory v. Peeler*, 756 F.2d 1547, 1551-52 (11th Cir. 1985). Moreover, while a case may begin with an actual controversy, the matter becomes moot "when it no longer presents a live controversy with respect to which a court can give meaningful relief." *Zinni v. ER Solutions, Inc.*, 692 F.3d 1162, 1166 (11th Cir. 2012) (quoting *Friends of Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1216 (11th Cir. 2009)).

Plaintiff likely had standing to bring its Declaratory Judgment claims at the beginning of this case, given that Defendants brought claims against Plaintiff's principal and made a demand that Plaintiff perform under the Bonds. Indeed, courts in this district have found that so long as there is either an existing claim related to the bond or a demand to perform under the bond, the surety may seek declaratory relief to determine the continued validity and enforceability of its obligations under the bond. However, the controversy has been mooted by the fact that Defendants have since withdrawn both their claim against Plaintiff's principal, R&S, and their demand for Plaintiff to perform under the Bonds. *See Vital Pham., Inc. v. Alfieri*, 23 F.4th 1282, 1288 (11th

Cir. 2022) ("a case or controversy 'must exist throughout all stages of litigation.'") (quoting *United States v. Amodeo*, 916 F.3d 967, 971 (11th Cir. 2019)); *see also Adler v. Duval County Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997) ("[A]n action that is moot cannot be characterized as an active case or controversy.") (citing *Church of Scientology Flag Serv. Org. v. City of Clearwater*, 777 F.2d 598, 604 (11th Cir. 1985)). Although Plaintiff attempts to extract some significance from the fact that Defendants withdrew their claims and demand "without prejudice" and "with all rights reserved," that does not alter the Court's conclusion because "[t]he remote possibility that an event might recur is not enough to overcome mootness, and even likely recurrence is insufficient if there would be ample opportunity for review at that time." *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001). Given the fact that any future lawsuit would provide Plaintiff with the opportunity to dispute the continued validity of the contracts following the alleged breach, the nature of Defendants' withdrawal does not permit Plaintiff to avoid the mootness doctrine.

Plaintiff points to several surety cases where other courts have found an active controversy existed, notwithstanding the absence of any pending litigation against the surety. *See* ECF No. [91] at 12 n. 15. However, those cases are distinguishable because at the time the courts resolved the question of standing in each of those cases, there was an outstanding demand that the surety perform on the bond, thereby creating an actual controversy. *See, e.g., Devs. Sur. & Indem. Co. v. Harding Vill.*, Ltd., No. 06-21267-CIV, 2007 WL 465478, at *3 (S.D. Fla. Feb. 9, 2007) (finding the fact "that Harding made demand upon it for performance under the Bond . . . [was] sufficient to establish that Developers has alleged a genuine dispute between itself and Harding."); *Arch Ins. Co. v. John Moriarty & Assocs. of Fla. Inc.*, 2016 WL 10518463, at *2 (S.D. Fla. Nov. 22, 2016) (explaining that although there was no pending claim against surety, the "outstanding demand for

nearly one million dollars" qualified as an "actual controversy")[7]; *Int'l Fid. Ins. Co. v. Americaribe-Moriarty JV*, 192 F. Supp. 3d 1326, 1330–31 (S.D. Fla. 2016) (proceeding with the declaratory action where there was an outstanding demand that the surety perform its obligation under the bond); *Devs. Sur. & Indem. Co. v. Archer W. Contractors, LLC*, Case No: 6:16-cv-1875, 2017 WL 6947785, at *2 (M.D. Fla. Apr. 17, 2017) (permitting declaratory action where there was an outstanding "Bond Claim pursuant to Paragraph 4 of the Bond"); *Great Am. Ins. Co. v Sch. Bd. Broward Cty., Fla.*, No. 09–61636–CIV, 2010 WL 4366865, at *3 (S.D. Fla. July 30, 2010) (explaining that the defendant "demand[ed] that [the surety] complete the work pursuant to the terms of the Bond" and that the instant declaratory action arose as a result of the defendant's contention that the surety still had not fully performed under the bond as demanded).[8]

Therefore, because neither Plaintiff nor its principal is the subject of ongoing litigation, and Plaintiff is not otherwise presently obligated to perform under the Bonds, there is no reasonable basis to conclude Plaintiff is suffering a present or imminent injury. Absent an invocation of Plaintiff's duty to perform, there is no substantial controversy between the parties, let alone a sufficiently real and immediate controversy regarding the parties' rights and obligations that would warrant maintaining a declaratory judgment claim.

Since Plaintiff is not actively suffering a present injury related to the Bonds, Plaintiff may only establish Article III standing for its Declaratory Judgment claims by demonstrating that it will

---

[7] Plaintiff also references *Arch Ins. Co. v. John Moriarty & Associates of Florida, Inc.*, CV 15-22403-CIV, 2016 WL 10518462 (S.D. Fla. May 3, 2016) and *Arch Ins. Co. v. John Moriarty & Associates of Florida, Inc.*, 223 F. Supp. 3d 1275 (S.D. Fla. 2016), which both involve the same underlying facts as *Arch Ins. Co. v. John Moriarty & Assocs. of Fla. Inc.*, 2016 WL 10518463.Those two cases also involve a scenario where there was an existing demand on the surety to perform under the bond.

[8] Plaintiff also cites to case law outside the Eleventh Circuit. However, the case referenced fails to support the theory that a declaratory action can proceed without an outstanding demand for a surety to perform in accordance with the bond. *See St. Paul Fire & Marine, Ins. Co. v. City of Green River, Wyo.*, 93 F. Supp. 2d 1170, 1173-1174 (D. Wyo. 2000).

suffer a real and substantial injury in the imminent future. *Ritterman v. Lexington Ins. Co.*, Case No. 18-61239-CIV, 2018 WL 7252902, at *2 (S.D. Fla. Dec. 3, 2018) ("In the absence of continuing conduct or an imminent threat of future harm to the parties, declaratory relief is unavailable.") (citing *Malowney v. Federal Collection Deposit Group*, 193 F.3d 1342, 1348 (11th Cir. 1999)). While Plaintiff insists that Defendants' withdrawal of their demand and accompanying claims *without prejudice* renders a future suit imminent as it allows Defendants to initiate a case against Plaintiff at any time, the Court is unpersuaded.

To satisfy Article III standing, "[a] threatened injury must be 'certainly impending,'" *Whitmore v. Arkansas*, 495 U.S. 149, 158, (1990) (internal citation omitted) and "proceed with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all." *Lujan*, 504 U.S. at 564 n. 2. As Defendants correctly point out, the mere potential for a future lawsuit does not satisfy the actual imminence standard because Defendants could voluntarily decide not to bring claims against Plaintiff, especially here, where there are no allegations that Defendants are actively preparing to bring a case. *See ThermoLife Int'l LLC v. Vital Pharm. Inc.*, Case No. 19-cv-61380, 2019 WL 4954622, at *4 (S.D. Fla. Oct. 8, 2019) (concluding that declaratory relief was not appropriate where the requested relief was "essentially designed to protect [plaintiff] from the threat of litigation that may very well never occur"); *see also Bacardi U.S.A., Inc. v. Empire Merchants, LLC*, Case No. 16-CV-20074, 2016 WL 1031311, at *2 (S.D. Fla. Mar. 9, 2016) ("Defendant's decision to remain mum about future lawsuits does not create a current case or controversy; a case or controversy is created by affirmative conduct and a declaratory judgment action may not be used 'as an anticipatory maneuver designed to preempt whatever actions' may be taken in the future.").

As the Eleventh Circuit explained in *ACLU of Fla., Inc. v. Miami-Dade Cty. Sch. Bd.*, "'immediacy requires [ ] that the anticipated injury occur within some fixed period of time in the future.' Immediacy, in this context, means reasonably fixed and specific in time and not too far off." 557 F.3d 1177, 1193-94 (11th Cir. 2009) (quoting *Browning*, 522 F.3d at 1161). Here, there is no fixed time in the future in which Defendants will bring a potential claim regarding the Bonds, nor a fixed period in which Plaintiff will otherwise suffer a substantial future injury. Plaintiff therefore lacks standing to assert its Declaratory Judgment claims and, as such, the claims must be dismissed for lack of jurisdiction.

Given that this is Plaintiff's fourth attempt to plead its claims, and the parties have gone through multiple rounds of extensive briefing on the pleadings, the Court finds that not only would amendment be futile, but an additional opportunity to amend would cause undue delay and undue prejudice to Defendants. *See Eiber Radiology, Inc. v. Toshiba America Medical Systems, Inc.*, 673 F. App'x 925, 930 (11th Cir. 2016) (noting that it is not inappropriate to dismiss with prejudice "where a counseled plaintiff has failed to cure a deficient pleading after having been offered ample opportunity to do so."); *Comparelli v. Bolivarian Republic of Venezuela*, 655 F. Supp. 3d 1169, 1194 (S.D. Fla. 2023); *Lacayo v Wells Fargo, N.A.*, Case No.: 16-CV-23187, 2018 WL 6807344, at *9 (S.D. Fla. Nov. 30, 2018) ("Dismissal with prejudice may be warranted where (1) there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments; (2) amendment would cause undue prejudice to the opposing party; or (3) amendment would be futile."); *Cf. Rivas v. Bank of New York Mellon*, 777 F. App'x 958, 965-66 (11th Cir. 2019) (concluding district court "properly determined that it would have been futile" to give the plaintiff "a third bite at the apple"). Accordingly, Plaintiff's Declaratory Judgment claims are dismissed with prejudice.

**C.  Plaintiff has Adequately Alleged its Breach of Contract Claims**

Defendants contend that Plaintiff has failed to establish its Breach of Contract claims because Plaintiff merely alleges "it 'has incurred damages,'" in a conclusory fashion "without any supporting facts or additional information." ECF No. [88] at 18. Defendants argue that Plaintiff fails to "explain how it has been damaged by [Defendants'] alleged breach of its obligations under the Bonds" and does not "identify any categories of damages" or "the amount of damages" it has incurred. *Id.* According to Defendants, to the extent Plaintiff provides any specifics, it merely asserts that it has "'incurred costs and expenses in investigating and responding' to [Defendants'] claims[.]" *Id.* (quoting ECF No. 80] at ¶ 107-08). However, there is no explanation as to how these costs and expenses constitute damages suffered as a proximate cause of Defendants' purported breaches. Given that vague catchall allegations of damages are insufficient to survive a motion to dismiss, Defendants contend Plaintiff's Breach of Contract claims must be dismissed.

Plaintiff argues the "Court already understands [its] damages allegations ('specifically, the damages Plaintiff incurred as a result of Defendants improperly depleting the remaining contract balances . . . as well as attorneys' fees incurred in bringing this lawsuit.')." ECF No. [91] at 19 (emphasis removed) (quoting ECF No. [77] at 15). According to Plaintiff, if the Court understands the damage allegations after reviewing the Complaint, the Defendants are on adequate notice of the damages as well. *See id.* Plaintiff further argues that even if its prior pleadings were deficient, Plaintiff has now specifically pled damages by alleging it "'incurred costs and expenses in investigating and responding to' [Defendants'] wrongful demand on the Bonds" and that "it has retained Etcheverry Harrison, LLP" to represent it in this dispute. *Id.* at 19. (emphasis removed) (quoting ECF No. [80] at ¶¶ 107-08). Given these allegations, Plaintiff contends it has overcome the relatively low burden of providing "general factual allegations of injury resulting from the

defendant's conduct[.]" *Id.* at 19-20 (quoting *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1323 (11th Cir. 2012)).

"For a breach of contract claim, Florida law requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract, and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009). There is no dispute amongst the parties that Plaintiff has adequately pled the first two elements of its Breach of Contract claims. *See generally* ECF No. [88]; *see also* ECF No. [91] at 19, n. 18. Therefore, the only question before the Court is whether Plaintiff has sufficiently alleged the third and final element—damages. To properly plead damages for a breach of contract claim, a plaintiff must provide more than "conclusory and non-descript allegations," and must "show that *damages* resulted from the breach." *Brooks v. Ampcus, Inc.*, Case No: 6:23-cv-1756, 2023 WL 9104786, at *3 (M.D. Fla. Nov. 20, 2023); *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1325 (11th Cir. 2012). "A party injured by [a] breach of contract is entitled to recover [only] those damages that 'naturally flow from the breach and can reasonably be said to have been contemplated by the parties at the time the contract was entered."" *Siever v. BWGaskets*, 669 F. Supp. 2d 1286, 1300 (M.D. Fla. 2009) (quoting *Rollins, Inc. v Butland*, 951 So. 2d 860, 876 (Fla. 2d DCA 2006)).

The Court finds Plaintiff's Breach of Contract claims adequately allege damages flowing from the alleged breach. Plaintiff's damages allegations need not be specific and must simply establish that Plaintiff incurred a pecuniary injury that flows from the contract. *See Siever*, 669 F. Supp. at 1300; *In re Brinker Data Incident Litig.*, No. 3:18-CV-686-J-32MCR, 2020 WL 691848, at *6 (M.D. Fla. Jan. 27, 2020); *see also Resnick*, 693 F.3d at 1324 ("Under the notice-pleading standard, we no longer require the hyper-technical code pleadings of ages past"). Plaintiff has done so here. Despite Defendants' insistence to the contrary, Plaintiff does not make a vague catchall

allegation of damages. Instead, Plaintiff specifically alleges that it suffered damages resulting from Defendants improperly depleting the remaining contract balances. *See* ECF No. [80] at ¶¶ 105, 129, 153, 177, 199, 221, 243, 265. Moreover, Plaintiff asserts that it incurred costs, expenses, and attorneys' fees as a result of investigating and responding to Defendants' "wrongful demand on the Bonds." ECF No. [91] at 19 (quoting ECF No. [80] at ¶¶ 107-08).[9] Therefore, Plaintiff has provided sufficient facts to establish that its injuries flow directly from Defendants' alleged breach of contract. Accordingly, Defendants' request to dismiss Plaintiff's Breach of Contract claims is denied.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.   Defendants' Motion to Dismiss, **ECF No. [88]**, is **GRANTED in part and DENIED in part**.

2.   Counts Two, Four, Six, Eight, Ten, Twelve, Fourteen, and Sixteen of the Third Amended Complaint, ECF No. [80], are **DISMISSED with prejudice**.

3.   Counts One, Three, Five, Seven, Nine, Eleven, Thirteen, and Fifteen of the Third Amended Complaint survive Defendants' Motion to Dismiss.

4.   Defendants shall file an Answer to the Third Amended Complaint no later than **June 10, 2025.**

---

[9] Plaintiff contends that the wrongful demand on the Bonds constituted a breach of the contracts and therefore, the subsequent investigation and response was an injury that flowed directly from the alleged breaches. *See e.g.*, ECF No. [80] at ¶ 107 ("As a result of the foregoing breaches, the STS A3 OBLIGEES had no lawful right to make demand against ARCH and breached the STS Coastal Bond by doing so.").

Case No. 23-cv-23524-BLOOM/Torres

**DONE AND ORDERED** in Chambers at Miami, Florida, on **May 27, 2025**.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record