UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:23-cv-23524- BLOOM/Torres

ARCH INSURANCE COMPANY,
 a foreign corporation

    Plaintiff,

vs.

A3 DEVELOPMENT, LLC, a foreign limited
liability company; A3 NORTH
DEVELOPMENT, LLC, a foreign limited
liability company, and A3 AMENITIES, LLC,
a foreign limited liability company,

    Defendants.
_____/

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO STRIKE AFFIRMATIVE DEFENSES (DE 101)

Defendants, A3 Development, LLC ("A3 Development"), A3 North Development, LLC ("A3 North"), and A3 Amenities, LLC ("A3 Amenities"), (collectively, the "Defendants" or the "A3 Entities"), file this Response to Plaintiff, Arch Insurance Company's ("Arch") Motion to Strike Affirmative Defenses (ECF No. 101), and in support thereof state as follows:

### INTRODUCTION

This action originally arose as a result of a dispute between the A3 Entities, its general contractor, Suffolk Construction Company, Inc. ("Suffolk"), and its masonry and shellwork subcontractor, R&S Concrete South, Inc. ("R&S'), with respect to the construction of two fifty plus story luxury residential towers located at 17901 Collins Avenue and 17975 Collins Avenue in

Sunny Isles Beach, Florida 33160, known as The Estates at Acqualina (the "Project"). The A3 Entities originally hired Coastal Construction Company of South Florida, Inc. ("Coastal") as the general contractor for the Project. Coastal then entered into a series of subcontracts with R&S for the Project's shell, concrete, and masonry work (the "Subcontracts"). In connection with the Subcontracts, Arch issued performance bonds on behalf of R&S as principal, and in favor of Coastal as the obligee, with the A3 Entities as additional obligees (the "Original Bonds").

In June of 2020, the A3 Entities terminated Coastal as the general contractor for the Project and hired Suffolk to replace Coastal as the general contractor on the Project. While Suffolk assumed most of Coastal's subcontract agreements, it was unable to secure a direct subcontract with R&S due to ongoing litigation between R&S and Suffolk. As a result, R&S demobilized from the Project. To preserve progress and avoid further delays, the A3 Entities agreed to retain R&S directly—albeit under Suffolk's direction—as the shell and masonry contractor. Arch consented to this arrangement and issued new performance bonds (the "Bonds") covering R&S's continued work.

On September 14, 2020, the A3 Entities, R&S, and Arch entered into a Continuation Agreement (Exhibit A), under which R&S agreed to resume its work under the terms of the original Coastal subcontracts. Over time, however, R&S's performance significantly declined, resulting in substantial delays, defects, and quality issues. The A3 Entities were ultimately forced to initiate pre-default actions against both R&S and Arch. These events form the basis of the present litigation in which Arch has asserted the following claims against the A3 Entities: [insert the claims here]. In response to Arch's Complaint, the A3 Entities asserted eight affirmative defenses. Arch seeks to strike seven of those affirmative defenses, arguing, in conclusory fashion, that they are not sufficiently pled. As set forth in greater detail herein, the A3 Entities' defenses are properly asserted

and each affirmative defense contains sufficient information to reasonably inform Arch of the legal argument and the factual basis of the defense.

## Argument

**I.   Standard for consideration of motion to strike affirmative defenses.**

Arch seeks to strike seven of the A3 Entities' affirmative defenses but fails to provide adequate legal and factual support as to why Arch is entitled to such extreme relief. Under Rule 12(f) the court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Arch's motion does not adequately assert that the A3 Entities' affirmative defenses are "redundant, immaterial, impertinent, or scandalous."

Moreover, under Rule 12(f), an affirmative defense may only be stricken if the "defense is comprised of no more than bare-bones, conclusory allegations' or is 'insufficient as a matter of law." Fed. R. Civ. P. 12(f). An affirmative defense is insufficient as a matter of law where: "(1) in the face of the pleadings, it is patently frivolous, or (2) it is clearly invalid as a matter of law." *Northrop & Johnson Holding Co. v. Leahy*, No. 16-cv-63008-Bloom/Valle, 2017 WL 5632041, at *3 (S.D. Fla. Nov. 22, 2017).

Further, striking a pleading is viewed as a severe remedy with courts consistently expressing reluctance to employ such an extreme measure. Strikes "will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Harty v. SRA/Palm Trails Plaza, LLC*, 755 F. Supp. 2d 1215, 1218 (S.D. Fla. 2010). Further, affirmative defenses are subject to the general pleading requirements of Rule 8(a) ("short and plain statement") and will be stricken only if they fail to recite more than bare-bones conclusory allegations. *Microsoft Corp. v. Jesse's Computers & Repair, Inc.*, 211 F.R.D. 681, 684 (M.D. Fla.

WEISS SEROTA HELFMAN COLE & BIERMAN

2002). None of the A3 Entities' affirmative defenses are patently frivolous or clearly invalid as a matter of law. Simply, Arch has failed to meet its burden in seeking to strike the A3 Entities' Affirmative Defenses.

## II. A3 Entities' affirmative defenses are sufficiently pled.

It is well-established that a responsive pleading need only provide notice of the defense being asserted. *Ramnarine v. CP RE Holdco 2009-1, LLC*, No. 12-61716-CIV, 2013 WL 1788503, at *3 (S.D. Fla. Apr. 26, 2013). "Therefore, so long as [the A3 Entities'] affirmative defenses give [Arch] notice of the claims [the A3 Entities] will litigate, the defenses will be appropriately pled under Rules 8(b) and (c)." *See id.*; *see also Losada v. Norwegian (Bahamas) Ltd.*, 296 F.R.D. 688, 691 (S.D. Fla. 2013) (explaining that the purpose of an affirmative defense is to give the opposing party notice of issues to be litigated.). Under this standard, and as set forth below, it is evident that the A3 Entities' affirmative defenses meet the pleading standards and adequately inform Arch and the Court of the A3 Entities' position.

Arch's contention that A3 Entities' affirmative defenses are insufficiently pled is belied by the relevant case law as set forth below:

**First Affirmative Defense.** In their first affirmative defense, the A3 Entities' assert that they complied with all preconditions under section 3 of the performance bonds, including providing notice, declaring default, terminating the contractor, and agreeing to pay the balance, precluding Arch's claim for breach of the Bonds. This affirmative defense is properly pled as it goes beyond a mere denial and provides a complete defense to liability – that all conditions precedent to Arch's liability were indeed satisfied. Under Rule 9(c) a defendant may allege compliance with conditions precedent as an affirmative defense (Fed. R. Civ. P. 9(c)), with the burden of proof resting with the

defendant. *See McIntosh v. Wells Fargo Bank, N.A.*, 226 So. 3d 377, 379 (Fla. 5th DCA 2017) (explaining that the burden to prove compliance with conditions precedent rests with the plaintiff if asserted in the complaint and denied in the answer but with the defendant if raised instead as an affirmative defense in the answer);  Here, the A3 Entities have satisfied the burden of proof showing compliance with conditions precedent for enforcement of the bonds.

**Third Affirmative Defense:** In their third affirmative defense, the A3 Entities contend that Arch failed to promptly act under the Bonds, after the A3 Entities properly complied with the conditions precedent under the Bonds. Under Rules 8(b) and 8(c) an affirmative defense is sufficiently pled if it gives notice to the plaintiff and the Court of the nature of the defense. In *Birren v. Royal Carribiean Cruises, Ltd.*, the court held that affirmative defenses need not provide detailed factual allegations and only need to provide fair notice of the grounds upon which the defense rests. 336 F.R.D. 688, 694 (2020). Arch's assertion is a narrow interpretation not supported by case law. Rather, the A3 Entities provided a viable and fact-based defense to Arch's Complaint – that Arch's delayed response defeated the core protective purpose of the performance bonds.

**Fourth Affirmative Defense.**  In their fourth affirmative defense, the A3 Entities allege that the governing contractual documents, including the Continuation Agreement and the incorporated Subcontract, expressly allowed the A3 Entities to correct R&S's defective work. Arch argues this is nothing more than a denial of an element of its claims. Nevertheless, courts recognize contractual provisions that waive a plaintiff's rights under the contractual documents as a valid affirmative defense. *See Solis v. Zenith Cap., LLC*, No. 19-80730-CIV, 2019 WL 7376782, at *2 (S.D. Fla. Sept. 26, 2019) ("Defenses that rely on interpretation of the contract or assert avoidance such as waiver or modification are properly pled as affirmative defenses."). The A3 Entities cite specific

contractual language from the Continuation Agreement and the Subcontract allowing the A3 Entities to supplement R&S's work without providing additional notice to Arch. These contractual provisions provide an independent basis for denial of liability, constituting a valid affirmative defense that relies specifically on interpretation of the Continuation Agreement and the Subcontract.

**Fifth and Sixth Affirmative Defense:** The A3 Entities fifth and sixth affirmative defenses directly speak to causation and damages. Simply, the A3 Entities contend that Arch's failure to timely elect a remedy under section 5 of the Bonds – an action outside the control of the A3 Entities – directly contributed to Arch's alleged damages. Arch contends that these affirmative defenses are duplicative of the A3 Entities' second affirmative defense, which asserts that Arch's claims are barred due to Arch's initial breach of the Bonds. Arch fails to see the distinction. While the second affirmative defense is based on the concept of first breach, the fifth and sixth affirmative defenses address Arch's self-infliction of damage under theories of avoidance. Indeed, in *Royal Palm Sav. Ass'n v. Pine Trace Corp.*, the court held that an affirmative defense is one that "avoids liability, wholly or partly, by new allegations of excuse, justification or other negating matters." 716 F. Supp. 1416, 1420 (M.D.Fla.1989). The A3 Entities properly allege Arch's failure to comply with the Bonds is a negating cause of Arch's own damage. Additionally, under 8(d)(3), redundant defenses are not valid reasons for striking an affirmative defense, as a plaintiff may plead "as many separate claims or defenses it has, regardless of consistency". Fed. R. Civ. P. 8(d)(3). Therefore, because A3 Entities' fifth and sixth defenses provide distinct contentions of Arch's contribution to causing and incurring damages it seeks to recover, striking them would be improper.

**Seventh Affirmative Defense:** In their seventh affirmative defense, the A3 Entities state that, to the extent Arch has suffered any damages, recovery is barred because A3 Entities' actions were not the

proximate legal cause, as Arch failed to make a timely election of remedies under the Bonds. Arch contends this is legally improper because this defense does not apply to breach of contract claims and fails to provide sufficient support to show causation. However, courts consistently find equitable defenses are appropriate when the plaintiff attempts to benefit from its own actions or inaction, with courts specifically recognizing that a surety's failure to act under performance bonds may be interpreted under equitable principles, particularly when there is a direct link between the plaintiff's own conduct and the relief sought. *See Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 244 (1933); *PGA Nat'l Resort, LLC v. Liberty Mut. Fire Ins. Co.*, 2016 WL 8716673, at *3 (S.D. Fla. Oct. 24, 2016).

**Eight Affirmative Defense:** In their eighth affirmative defense, the A3 Entities contend that if Arch suffered damages, these damages resulted from Arch's failure to mitigate its damages, barring recovery. Arch contends that failure to mitigate damages is not a proper defense in a surety action. Courts recognize, particularly in surety cases, the duty to mitigate one's damages. *See Int'l Fid. Ins. Co. v. County of Rockland,* 98 F. Supp. 2d 400, 424 (S.D.N.Y. 2000) (recognizing failure to mitigate as a valid defense in surety bond case). By failing to elect a remedy under the Bonds, Arch failed to mitigate its own damages, and the A3 Entities had to commence mitigation to prevent further losses without Arch. Under Rule 8(c) this is sufficiently pled, giving Arch adequate notice of the A3 Entities' defense. Fed. R. Civ. P. 8(c).

For the foregoing reasons, the A3 Entities respectfully request that the Court deny Arch's Motion to Strike. Nevertheless, to the extent the Court determines that any of the affirmative defenses are insufficient as pled, the A3 Entities respectfully request leave to amend such. *See*

*Microsoft Corp. v. Jesse's Computers & Repair, Inc.*, 211 F.R.D. 681, 684 (M.D. Fla. 2002) ("if a court strikes an affirmative defense, it should ordinarily grant the defendant leave to amend.").

**WHEREFORE,** the A3 Entities respectfully request the Motion to Strike be denied (or to the extent any affirmative defenses are stricken, that the A3 Entities be granted leave to serve amended affirmative defenses), and for such relief as the Court deems appropriate.

Respectfully submitted.

WEISS SEROTA HELFMAN
COLE & BIERMAN, P.L.
Co-Counsel for A3 Entities
200 E. Broward Blvd., Suite 1900
Ft. Lauderdale, FL 33301
Tel: 954-763-4242/Fax: 954-764-7770

By: /s/ *Michael J. Kurzman*
MICHAEL J. KURZMAN
Florida Bar No. 814342
MKurzman@wsh-law.com
dmurphy@wsh-law.com
tjames@wsh-law.com
ELIZABETH COPPELECCHIA
Florida Bar No. 86747
ecoppolecchia@wsh-law.com
lmartinez@wsh-law.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 11th day of July 2025, I electronically filed the foregoing Notice with the Clerk of Court using CME/CF. I also certify that the foregoing document is being served on this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic

WEISS SEROTA HELFMAN COLE & BIERMAN

Page **9** of **10**  
CASE NO. 1:23-cv-23524- BB

Filing generated by CME/CF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

 /s/Michael J. Kurzman            
MICHAEL J. KURZMAN

WEISS SEROTA HELFMAN COLE & BIERMAN

Page **10** of **10**<br>CASE NO. 1:23-cv-23524- BB

## SERVICE LIST

**Edward Etcheverry, Esq.**
**Jeffrey S. Geller**
*Counsel for Plaintiff*
Etcheverry Harrison LLP
150 South Pine Island Road, Suite 105
Ft. Lauderdale, FL  33324
Telephone:  954-370-1681
Etcheverry@etchlaw.com
geller@etchlaw.com
service@etchlaw.com